UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSEPH EARL                                                    CIVIL ACTION
HENDERSON

VERSUS                                                         NO. 12-809-BAJ-RLB

COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION

**NOTICE**

      Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

      In accordance with 28 U.S.C. § 636(b)(1)(C), you have **14 days** from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

      **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

      Signed in Baton Rouge, Louisiana, on February 20, 2014.

                                                                                                    RICHARD L. BOURGEOIS, JR.
                                                                                         UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOESPH EARL HENDERSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-809-BAJ-RLB** |
| **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Joseph Earl Henderson ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for supplemental social security income (SSI) "under Title XVI of the Social Security Act" (Tr. 95).[1]  For the reasons assigned below, the Court recommends the decision of the Commissioner be **AFFIRMED** and Plaintiff's Appeal **DISMISSED with prejudice**.

**I.     PROCEDURAL HISTORY**

On August 9, 2010, Plaintiff filed an application for supplemental security income benefits (Tr. 10, 33, 95) alleging disability as of June 15, 2010 (Tr. 10, 33, 95) based on left hip and left foot problems (Tr. 33), high blood pressure, and stomach problems (Tr. 49).  Plaintiff's

---

[1] References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] at [page number(s)])".  Reference to the record of administrative proceedings filed in this case is designated by "(Tr. [page number(s)])".

1

application was initially denied (Tr. 32) on October 5, 2010 because the Commissioner found Plaintiff's severe impairments — "Essential Hypertension" and "Dysfunction-Major Joints" — (Tr. 36) were neither alone nor in combination disabling (Tr. 39). Plaintiff then filed a timely request for a hearing (Tr. 53) before an Administrative Law Judge (ALJ) on November 6, 2010. The hearing took place on September 19, 2011 (Tr. 20-31); Plaintiff, represented by counsel (Tr. 10, 20, 27) appeared and testified (Tr. 20, 22-30). No other witnesses testified at the hearing. (Tr. 20-31).

The ALJ rendered an unfavorable decision (Tr. 10-16) on behalf of the Commissioner on October 28, 2011 (Tr. 7-9), finding Plaintiff had "not been under a disability . . . since August 9, 2010, the date the application was filed" (Tr. 10, 16). Plaintiff's request for review (Tr. 82) was denied by the Appeals Council on November 6, 2012. (Tr. 1-3). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*,

2

305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.   ALJ'S DETERMINATION

The Commissioner, through the ALJ, works through a five-step sequential evaluation process to determine disability. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the

3

claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ initially found Plaintiff had "not engaged in substantial gainful activity since August 9, 2010, the application date." (Tr. 12). At the second step, the ALJ determined Plaintiff had the "following severe impairments: left hip osteoarthritic, left trochanteric bursitis and chronic hip pain." (Tr. 12). Plaintiff's impairments, either alone or in combination, did not met or medically equal a listed impairment at the third step. (Tr. 12). Between steps 3 and 4 the

4

ALJ gave "careful consideration to the entire record" and found Plaintiff had the residual functional capacity (RFC) to perform the full range of sedentary work. (Tr. 12). Based on the RFC, Plaintiff could no longer perform his past relevant work as a "laborer," at the fourth step of the evaluation. (Tr. 15). At step 5, application of the Medical Vocational Guidelines (Grids) instructed that Plaintiff (a) was a "younger individual," (b) with a high school education and capable of communicating in English, (c) who may or may not have transferable job skills. (Tr. 15). Considering these factors along with the RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 16). Ultimately, Plaintiff had "not been under a disability . . . since August 9, 2010, the date of the application." (Tr. 16).

## IV. ASSIGNMENTS OF ERROR

Plaintiff asserts four independent and alternative grounds for reversal. First, substantial evidence does not support the RFC because it omits restrictions assessed by Dr. Michael Day, whose opinion the ALJ "adopted." (R. Doc. 16 at 3). Second, the Commissioner's decision "violates principles of administrative res judicata by failing to apply issue preclusion and adopting an RFC which is less restrictive that the prior ALJ decision, without finding new evidence that the claimant's impairment improved." (R. Doc. 16 at 4-5). Third, Plaintiff urges his "allegations were improperly rejected without the assessment of the claimant's credibility which is required by the regulations." (R. Doc. 16 at 6-8). Finally, Plaintiff contends the Commissioner did not satisfy its burden at step 5 because: (1) the "record establishes [non-exertional] restrictions beyond" the RFC; and (2) the ALJ's failure to recognize them ultimately "resulted in improper reliance on the Medical Vocational Guidelines." (R. Doc. 16 at 8-10). Plaintiff contends both step 5 errors warrant reversal. (R. Doc. 16 at 8-10).

5

## V.     DISCUSSION

### A.     Res Judicata (Assignment of Error No. 2)

Plaintiff requests remand of the ALJ's decision because "it violates principles of administrative res judicata by failing to apply issue preclusion and adopting an RFC which is less restrictive than the prior ALJ decision, without finding new evidence that the claimant's impairment improved." (R. Doc. 16 at 4). Plaintiff previously applied for disability benefits and the Commissioner denied his application in a decision issued by an ALJ on June 24, 2010. (R. Doc. 16 at 4; Tr. 117-18). The June 24, 2010 decision is not part of the Administrative Transcript before the Court and it does not appear that it was before or considered by the Administration, including the ALJ. (Tr. 160). According to Plaintiff, the June 24, 2010 decision "found that the claimant was limited to sedentary exertion and further found that the claimant 'needs to move around every five to fifteen minutes.'" (R. Doc. 16 at 4). The current ALJ found Plaintiff could perform the full range of sedentary work without any additional exertional or non-exertional limitations.

The Social Security Administration treats a subsequent disability application involving a non-adjudicated period as a separate determination requiring de novo review and an independent evaluation of the facts and the evidence. *See* AR 00-1(4), 2000 WL 43774, at *3 ("SSA does not consider prior findings made in the final determination or decision on the prior claim as evidence in determining disability with respect to the unadjudicated period involved in the subsequent claim."). The ALJ here, consistent with the above process, conducted an independent evaluation of the evidence in the record, determined Plaintiff's RFC based on that record and ultimately concluded that Plaintiff was not disabled.

6

Plaintiff urges this Court to require proof of medical improvement through "new evidence" prior to finding a claimant has a higher residual functional capacity in a subsequent claim for benefits following a previous denial. (R. Doc. 16 at 4-5) ("In view of the more restrictive RFC in the prior decision, ALJ Wahlder erred by issuing his decision without reference to any new evidence showing that the claimant's condition had improved."). The "medical improvement standard," however, applies only to those cases in which a claimant has been found eligible for benefits. *See, e.g.*, 42 U.S.C. § 1382c(a)(4)(A)(i)(I) (defining medical improvement standard for termination of existing SSI benefits); 20 C.F.R. § 416.994(b) (prior award of SSI benefits may be terminated upon showing of "medical improvement"); *Griego v. Sullivan*, 940 F.2d 942, 943-44 (5th Cir. 1991) (explaining medical improvement standard applicable to termination of existing benefits).

Some courts outside of this circuit, however, have found that res judicata bars the Commissioner "from reaching an inconsistent result in a second proceeding based on evidence that has already been weighed . . . in an earlier proceeding." *Lively v. Sec'y of Health and Human Servs.*, 820 F.2d 1391, 1392 (4th Cir. 1999) ("evidence, not considered in the earlier proceeding, would be needed as an independent basis" to show claimant's impairment sufficiently improved to warrant a higher RFC than previously determined); *see also Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) ("Absent an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." The SSA does not have "unfettered discretion to reexamine issues previously determined absent new and additional evidence."); *Chavez v. Bowen*, 844 F.2d 691, 694 (9th Cir. 1988) ("The first administrative law judge's findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings.").

7

As of this Report and Recommendation, it does not appear that the Fifth Circuit has addressed this issue directly. Nonetheless, district courts in our circuit have cited *Lively*, *Drummond* and *Chavez* with approval. *See Gobert v. Astrue*, No. 12-2103, 2014 WL 31254, at *9 (W.D. La. Jan. 3, 2014) ("the principal [sic] of res judicata explained in Lively applies to the Commissioner's final decisions"); *Chapa v. Astrue*, No. 12-9, 2012 WL 4797117, at *14 (S.D. Tex. Oct. 8, 2012) (citing *Lively* as support for affirming "subsequent" and contradictory step 4 finding because it satisfied substantial evidence standard where it was based on "new evidence"); *Shelton v. Astrue*, No. 08-403, 2011 WL 1234910, at *9 (E.D. Tex. Jan. 31, 2011) ("*Lively's* reasoning is pertinent and persuasive here."), *adopted by* 2011 WL 1191946, at *1 (E.D. Tex. March 30, 2011) ("While *Lively* does not bind district courts in the Fifth Circuit, it is persuasive. Further, decisions in the Sixth, Seventh, and Eighth Circuits . . . consistently recognize that *res judicata* can be employed offensively by social security claimants."). Plaintiff describes *Lively* and its progeny as "notably similar to the case at bar" and suggests it dictates the outcome of his appeal. The Court does not agree.

To begin, we decline Plaintiff's request to adopt the holdings of *Lively*, *Drummond* and *Shelton* and reiterate that these cases, along with *Chavez*, *Gobert* and *Chapa*, are not binding on this Court. And while we agree with the underlying principle that the government can be bound by prior adjudications, these cases are readily distinguishable. Unlike *Shelton* or *Lively*, where the adjudicated periods were either the same or two weeks apart, Plaintiff's two applications concerned different time periods. Plaintiff's first application was denied on June 24, 2010 and the adjudicated period for his subsequent application — August 9, 2010 to October 21, 2011— did not overlap with his previous application. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996) (Rejecting the argument that the "first ALJ's findings established" claimant's "maximum

8

[RFC]—at that time and forever more" because the first "was a binding determination . . . for that time period. It has no effect, however, on an application . . . for a subsequent time period."); *Pulliam v. Sullivan*, 769 F. Supp. 1471, 1477 (N.D. Ill. 1991) (Res judicata was inapplicable because "the two claims are distinct and unrelated by reason of the non-overlapping time periods of disability. . . . [E]arlier findings bar reconsideration only of Pulliam's condition" during that time period and "do not bar consideration of his condition" at a later date.).

Most importantly, the vast majority of medical evidence in the record (Tr. 166-67, 172-78, 184-92, 197-204, 208-12, 214-33) and the medical evidence cited by the ALJ (Tr. 13-15, 166-67, 177, 184-86, 208-12, 214, 219, 222, 228-29, 232-33) post-dates June 24, 2010 — the date of the previous denial.[2] This evidence, not considered in the earlier proceeding, constitutes the "independent basis" referenced in *Lively* to support a new RFC determination.[3] In other words, res judicata does not apply because the ALJ's inconsistent RFC finding "was not a 're-evaluation' of the evidence, but rather an independent consideration of [Plaintiff's] eligibility at the time of [his] second application." *Rucker*, 92 F.3d at 495 (rejecting claimant's res judicata argument and reliance on *Lively* where "the second ALJ considered Rucker's disability status only for the period *after* . . . the Commissioner denied her first application"); *see also Hardy v. Chater*, 64 F.3d 405, 407 (8th Cir. 1995) (res judicata did not bar ALJ's step 4 finding that contradicted prior decision because ALJ considered new evidence; he "did not reevaluate[]" evidence weighed in prior decision); *but see Shelton*, 2011 WL 1234910 at *9 ("No new evidence . . . was before ALJ Meyer. Absent such evidence, he . . . w[as] bound by the two

---

[2] The administrative transcript contains very few medical records prior to June 24, 2010. Those records are dated March 5, 2010 (Tr. 180), March 15, 2010 (Tr. 168, 193-94), February 2, 2010 (Tr. 195-96), November 3, 2009 (Tr. 169-70) and May 1, 2008 (Tr. 171).

[3] As we explain in the proceeding sections, this new evidence satisfies the substantial evidence standard of review. *See* discussion *infra* Part V.B-C; *see also Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 477-78 (4th Cir. 1999) (clarifying that: "At its essence, *Lively* really has very little to do with preclusion. . . . [T]he result in *Lively* is instead best understood as a practical illustration of the substantial evidence rule.").

9

earlier, sedentary [RFC] determinations . . . ."). And so, res judicata did not bar the ALJ from finding Plaintiff had a higher RFC than previously determined based on the record before him, which largely contained new evidence.

Having determined res judicata does not affect Plaintiff's current application for benefits, the Court turns to whether the Commissioner's decision is legally sound and supported by substantial evidence.

### B.   Adoption of Dr. Day's Medical Opinion (Assignment of Error Nos. 1 and 4)

Plaintiff argues there is not substantial evidence to support the residual functional capacity assessment because it contradicts the medical opinion adopted and relied on by the ALJ — the opinion of Dr. Michael Day. (R. Doc. 16 at 3). The ALJ found Plaintiff had the residual functional capacity to perform the full range of sedentary work. (Tr. 12). Sedentary work requires lifting up to 10 pounds, standing or walking for "about 2 hours of an 8-hour workday" and sitting "approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983); *see also* 20 C.F.R. § 416.967(a) (defining sedentary work). Based on his examination, Day found "the patient could sit intermittently for six to eight hours a day without difficulty" and he "could stand and walk intermittently throughout the day for two to four hours with frequent rest periods." (Tr. 212).[4]

Plaintiff does not contest Dr. Day's opinion or point to any additional evidence that would raise doubts about his ability to sit for a total of 6 to 8 hours in an 8-hour workday. In other words, his only argument is that the ability to sit *intermittently* for a total of 6 to 8 hours is inconsistent with the ability to perform the full range of sedentary work. (R. Doc. 16 at 3, 7, 9). Moreover, Plaintiff argues this inability to perform sedentary work meant the ALJ could not

---

[4] In Plaintiff's words: "Dr. Day opined that the claimant is limited to sitting intermittently for 6 to 8 hours, and . . . is limited to standing and walking intermittently throughout the day for 2 to 4 hours with frequent rest periods." (R. Doc. 16 at 3).

10

have relied on the Medical Vocational Guidelines at step five.  Instead, the Regulations required the ALJ to elicit testimony from a vocational expert.  The Court does not agree.

Plaintiff's "need to sit and stand 'intermittently' does not undermine the ALJ's determination" that Plaintiff can perform the full range of sedentary work. *Rice v. Barnhart*, 127 F. App'x 524, 526 (2d Cir. 2005).  Courts "have previously rejected the argument that sedentary work categorically requires a worker to sit continuously without standing or shifting positions at all." *Rice*, 127 F. App'x at 526; *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("The regulations do not mandate the presumption that all sedentary jobs in the [U.S.] require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight."); *Rutledge v. Sullivan*, 986 F.2d 1424, at *3 (7th Cir. 1993) (unpublished table decision) (medical evidence that claimant could "sit for about six hours during an eight-hour day, stand and walk for about six hours intermittently during the day" was consistent with full range of sedentary work); *Leonard v. Apfel*, 182 F.3d 932, at *2 n.1 (10th Cir. 1999) (unpublished table decision) ("Sedentary work, by definition, requires between six and eight hours of sitting. However, six to eight hours of constant sitting is not required."); *Maxwell v. Astrue*, 268 F. App'x 807, 810 (10th Cir. 2008) (inability to sit for 6 hours consecutively was consistent with "full range of sedentary work" because it "does not require six hours of uninterrupted sitting" and 2 hours of walking "is most likely interspersed throughout the day so that an individual is not likely to sit for prolonged periods"); *Nieves v. Astrue*, No. 12-069, 2013 WL 1192013, at *9 (W.D. Tex. March 21, 2013) ("sit for up to six hours, and walk and stand intermittently for up to two hours, was merely a restating of the finding that Plaintiff has the RFC to perform the full range of basic sedentary work"); *Locke v. Astrue*, No. 09-1178, 2010 WL 2521394, at *14 (S.D. Tex. June 22, 2010) (need to "sit/stand" intermittently was

11

consistent with sedentary work and erosion of occupational base only implicated "in cases of unusual limitation of ability to sit or stand"); *Grissom v. Astrue*, No. 08-500, 2009 WL 1309506, at *6 (C.D. Cal. May 8, 2009) ("Sedentary work also requires an individual to be able to sit for approximately six hours during an eight-hour workday, in roughly two-hour blocks of time. . . . Plaintiff's need for intermittent breaks does not preclude work at this exertional level."); *Wooten v. Shalala*, No. 92-289, 1994 WL 655886, at *3 (M.D. Ga. July 27, 1994) ("sedentary work does not require that a claimant have the ability to sit for six (6) uninterrupted hours, but only that the claimant have the ability to sit for approximately a total of six (6) hours in a given day").[5]

Plaintiff's argument is further weakened by the record, which supports his ability to sit as contemplated by sedentary work. At most, sedentary work requires 2 hours of sitting at a time. *See* SSR 96-9P, 1996 WL 374185, at *6-7 (July 2, 1996) (sedentary work requires sitting up to 6 hours "at approximately two-hour intervals" with normal breaks). Nothing in the record indicates Plaintiff cannot sit for 2 hours. (Tr. 122) (daily activities include watching TV, talking on the phone and walking around the house); (Tr. 125) (Plaintiff listed "watching TV . . . everyday" as his only hobby and interest). In fact, the record demonstrates that Plaintiff's impairments limit his ability to stand and walk — not sit. (Tr. 126) (Plaintiff can walk ¼ of a mile and can resume walking after 30 minutes of rest); (Tr. 145) (Plaintiff alleges "[l]imited mobility – unable to lift or walk for a long distance"); (Tr. 148) (Plaintiff claim he is "[l]ess active – trouble walking"); (Tr. 208) (patient reports being "unable to do persistent standing or walking"); (Tr. 212) (left foot pain causes "very slight limp when he first stands and starts to

---

[5] The Sixth Circuit has reached the opposite conclusion, albeit, faced with slightly different facts. *Walker v. Chater*, 117 F.3d 1421, 1997 WL 369445 (6th Cir. 1997) (unpublished table opinion). In *Walker v. Chater*, the Sixth Circuit noted one doctor indicated the claimant could sit for 6 hours, "but only if done intermittently," while a second doctor found he "could sit for only one hour at a time for a total of three hours." *Id.* at *6. Considering these opinions and limitations supported by the record, the Sixth Circuit held the claimant could not perform the full range of sedentary work. *Id.* at 6-7.

12

walk but his gait is otherwise normal"); (Tr. 188, 222) (left hip pain upon getting up and lying down).  Likewise, Plaintiff has never claimed that he could not sit for extended periods or needed to alternate positions. (Tr. 22-30, 121-28).  His attorney also never mentioned any sitting restrictions; instead, he argued Plaintiff's occasional need to elevate his left ankle precluded the performance of sedentary work. (Tr. 28, 31) ("he can do sedentary work, there's no doubt, but with the leg elevation requirement . . . I just don't think employers . . . would allow that."). While this restriction wasn't adopted by the ALJ or included in Dr. Day's opinion, medical records demonstrate that Plaintiff's ankle swells with "with prolonged standing," which is not required by sedentary work. (Tr. 210) (patient reports "[n]o edema except with prolonged standing after two or three hours of continuous standing he will have swelling in his left heel which will go down when he is recumbent and elevating his leg"); (Tr. 209) (patient reports "pain and swelling after standing for approximately one to two hours").  For these reasons, there is substantial evidence supporting the ALJ's determination that Plaintiff can perform sedentary work.

  Because Plaintiff's ability to sit intermittently for 6 to 8 hours is consistent with the record and the performance of sedentary work, the ALJ did not have a duty to inquire beyond the Medical Vocational Guidelines and consult a vocational expert. *See* SSR 96-9P, 1996 WL 374185, at *6-7 (July 2, 1996) (sedentary work requires sitting up to 6 hours "at approximately two-hour intervals" with normal breaks and occupational base only eroded where "need to alternate" positions "cannot be accommodated by scheduled breaks and a lunch period"); SSR 83-12, 1983 WL 31253, at *4 (Jan. 1, 1983) ("Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined

13

range of work. . . . In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.").

### C. Credibility (Assignment of Error No. 3)

The Administration requires the decision to "contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P, 1996 WL 374186, at *4 (July 2, 1996). At the same time, "[p]rocedural perfection in administrative proceedings is not required" and remand will not be warranted "unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Failing to articulate specific reasons for discounting a claimant's credibility obviously results in some error. Nonetheless, that error is harmless where (1) the ALJ discusses the claimant's allegations and (2) substantial record evidence supports the credibility determination. *See, e.g.*, *Haywood v. Sullivan*, 888 F.2d 1463, 1469-70 (5th Cir. 1989) (failure to explain credibility findings was harmless error where decision summarized claimant's testimony and objective medical evidence and substantial evidence supported finding); *Story v. Astrue*, 294 F. App'x 883, 884 (5th Cir. 2008) (ALJ's consideration of subjective testimony "satisfied his obligation" to make specific credibility findings); *Salgado v. Astrue*, 271 F. App'x 456, 462-63 (5th Cir. 2008) (ALJ's previous discussion of claimant's allegations provided sufficient reasons for otherwise conclusory credibility finding).

Plaintiff alleges the ALJ committed reversible error by failing to offer any reasons for finding Plaintiff less than fully credible. According to Plaintiff, "the ALJ does not offer any explanation which actually addresses this particular claimant's credibility regarding his need to elevate his ankle." (R. Doc. 16 at 7). Plaintiff suggests the ALJ's decision cannot stand because it simply recites "boilerplate paragraphs commonly seen in many decision." (R. Doc. 16 at 7).

14

The ALJ began his analysis by fully discussing Plaintiff's testimony (Tr. 13), including his alleged need to elevate his leg to decrease swelling caused by prolong standing and walking. (Tr. 15, 28-29). The ALJ proceeds by detailing all of the medical evidence of record and explaining the particular evidence that contradicted Plaintiff's allegations. Despite Plaintiff's contentions, the ALJ specifically addressed his alleged need to elevate his leg "3 to 4 days per week." (Tr. 15, 28-29). The ALJ explained that: "Although the claimant may be doing this, there is no medical evidence showing that it was *recommended* or is *medically necessary*." (Tr. 15) (emphases added). The ALJ also discussed Plaintiff's alleged swelling that results from prolonged standing and walking, which he claims to relieve by elevating his leg. (Tr. 15, 28-29, 210). The ALJ then reasoned: "This is an indication that he should have no problems performing sedentary work, which entails [no] prolonged standing." (Tr. 15). As the Court previously found, this finding is substantially supported by the record evidence. Plaintiff does not offer any additional argument or cite any record evidence to contradict the ALJ's credibility and RFC findings. And so, the Court finds the ALJ's RFC and credibility assessments are legally sound and supported by substantial evidence.

V.     **RECOMMENDATION**

For the reasons described above, the Court **RECOMMENDS** the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on February 20, 2014.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**